IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

YOLANDA HERNÁNDEZ GONZÁLEZ;
GABRIEL RAMOS HERNÁNDEZ,

**Plaintiff,**

v.

MANATÍ MEDICAL CENTER, *et al*

**Defendants**

**CIVIL NO.** 16-3120 (RAM)

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, U.S. District Judge

Pending before the Court are co-defendants Dr. Irma Alvarado-Torres, Dr. Armando Cruzado-Ramos and Dorado Health, Inc.'s respective motions for summary judgment alleging, among other things, that all of Plaintiffs' claims are time-barred. (Docket Nos. 117, 122, 133). For the reasons discussed below, having considered the parties' submissions in support and in opposition thereto, the Court hereby **GRANTS** in part and **DENIES** in part co-defendants' motions for summary judgment. Id.

### I.   PROCEDURAL BACKGROUND

On December 9, 2016, plaintiffs Yolanda Hernández-González ("Ms. Hernández") and her son Gabriel Ramos-Hernández ("Mr. Ramos"), collectively "Plaintiffs," filed the present *Complaint* against Dorado Health Inc. d/b/a/ Manatí Medical Center ("DHI" or the "Hospital"), Dr. Armando Cruzado-Ramos ("Dr. Cruzado"), Dr.

Irma Alvarado-Torres ("Dr. Alvarado"), and other unnamed defendants. (Docket No. 1). Plaintiffs allege that Defendants incurred in medical malpractice and provided medical services without informed consent in violation of Articles 1802 and 1803 of the Puerto Rico Civil Code, PR Laws Ann. tit. 31, §§ 5141-5142. Id. at 1.

DHI and Dr. Alvarado moved to dismiss due to insufficiency and untimeliness of service of process. (Docket Nos. 21 and 28). The Court issued a Memorandum and Order: (1) denying the motions to dismiss; and (2) granting Plaintiffs a term to amend their *Complaint*. (Docket No. 31). Accordingly, Plaintiffs filed their *First Amended Complaint* on December 13, 2017. (Docket No. 33).

Plaintiffs allege that on **September 5, 2015**, Ms. Hernández underwent a laparoscopy performed by Dr. Alvarado and Dr. Cruzado at the Hospital. Id. ¶ 15. After the procedure, Dr. Alvarado informed Hernández "that she had to be kept in observation because her bowels had been lacerated" and the area needed to be cleaned and cauterized. Id. ¶ 16. After being discharged the next day, Hernández noticed that her stomach was swollen, and she began feeling a strong pain. Id. ¶¶ 17-18. Ms. Hernández returned to the Hospital on September 8, 2014, by ambulance, and remained hospitalized until early December 2014. Id. ¶¶ 18-22. Later that same month, Hernández returned to the Hospital and was ultimately discharged on January 9, 2015. Id. ¶ 22.

Plaintiffs claim that Dr. Cruzado's informed consent form does not list intestinal laceration as a possible complication and that Dr. Alvarado did not obtain Ms. Hernández's informed consent at all. Id. ¶ 29. Plaintiffs seek compensation for Ms. Hernández's physical damages and Mr. Ramos's mental anguish due to his mother's treatment. Id. ¶¶ 32-33. Although Plaintiffs recognize that the acts or omissions that caused their damages occurred in 2014, they contend that their claims are not time-barred because: (1) Plaintiffs sent letters to the Defendants tolling the statute of limitations in 2015; and (2) that Plaintiffs' damages are continuous. Id. at 2.

On March 20, 2019, Dr. Alvarado and Dr. Cruzado filed individual motions for summary judgement contending that Plaintiffs' claims were time barred. (Docket Nos. 117 and 122). In response, Plaintiffs filed an *Opposition to Co-defendants' Dr. Alvarado-Torres & Cruzado-Ramos' Motion for Summary Judgment*, a *Response* to their Statements of Uncontested Material Facts, and a *Memorandum of Law in Support of Opposition*. (Docket Nos. 142, 143 and 144). Dr. Alvarado and Dr. Cruzado filed a *Joint Reply to Plaintiff's Oppositio*n and Plaintiff filed a *Sur-Reply*. (Docket Nos. 155 and 166).

Similarly, on March 27, 2019, DHI filed its own *Motion for Summary Judgment* accompanied by a supporting *Memorandum of Law* and a *Statement of Uncontested Material Facts*. (Docket Nos. 133, 134

and 135) DHI argued that Plaintiff's claims against it are time-barred. Plaintiff filed a *Response in Opposition* to DHI's Statement of Uncontested Material Facts as well as a *Memorandum of Law in Support of Opposition*. (Docket Nos. 147 and 148). The Hospital filed a *Reply* to each motion (Docket Nos. 156-158) and Plaintiff filed *Sur-Replies* in response (Docket Nos. 170, 171 and 174).

## II. LEGAL STANDARD

A motion for summary judgment is governed by Fed. R. Civ. P. 56(a). Summary judgment is proper if the movant shows that: (1) there is no genuine dispute as to any material fact and (2) they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Thompson v. Coca-Cola Co.*,* 522 F.3d 168, 175 (1st Cir. 2008). A fact is considered material if it "may potentially 'affect the outcome of the suit under governing law.'" Albite v. Polytechnic Univ. of Puerto Rico, Inc., 5 F. Supp. 3d 191, 195 (D.P.R. 2014) (quoting Sands v. Ridefilm Corp., 212 F.3d 657, 660-661 (1st Cir. 2000)).

The moving party has "the initial burden of demonstrat[ing] the absence of a genuine issue of material fact with definite and competent evidence." Mercado-Reyes v. City of Angels, Inc., 320 F. Supp. 344, at 347 (D.P.R. 2018) (quotation omitted). The burden then shifts to the nonmovant, to present "competent evidence to

rebut the motion." <u>Bautista Cayman Asset Co. v. Terra II MC & P,</u>
<u>Inc.</u>, 2020 WL 118592, at 6* (quoting <u>Méndez-Laboy v. Abbott Lab.</u>,
424 F.3d 35, 37 (1st Cir. 2005)). A nonmoving party must show "that
a trialworthy issue persists." <u>Paul v. Murphy</u>, 2020 WL 401129, at
*3 (1st Cir. 2020) (quotation omitted).

While a court will draw all reasonable inferences in favor of
the non-movant, it will disregard conclusory allegations,
unsupported speculation and improbable inferences. *See* <u>Johnson v.</u>
<u>Duxbury, Massachusetts</u>, 931 F.3d 102, 105 (1st Cir. 2019).
Moreover, the existence of "some alleged factual dispute between
the parties will not affect an otherwise properly supported motion
for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 379 (2007)
(quotation omitted). Hence, a court should review the record in
its entirety and refrain from making credibility determinations or
weighing the evidence. *See* <u>Reeves v. Sanderson Plumbing Products,</u>
<u>Inc.</u>, 530 U.S. 133, 135 (2000).

In this District, summary judgment is also governed by Local
Rule 56. *See* L. CV. R. 56(c). Per this Rule, an opposing party
must "admit, deny or qualify the facts supporting the motion for
summary judgment by reference to each numbered paragraph of the
moving party's statement of material facts." <u>Id.</u> Furthermore,
unless the fact is admitted, the opposing party must support each
denial or qualification with a record citation. <u>Id.</u>

Responses which "do not oppose the truth of the statement offered and are either irrelevant to the matter at hand, provide additional evidence not related to the fact in question and/or failed to contradict it" are insufficient to properly controvert a material fact. *See* <u>Aztar Corp. v. N.Y. Entertainment, LLC</u>, 15 F.Supp.2d 252, 254 n. 1 (E.D.N.Y. 1998), aff'd. 210 F.3d 354 (2d Cir. 2000) (noting that responses only averring a "lack of knowledge or information sufficient to either admit or deny [a fact]" did not create an issue of fact).

Additionally, Local Rule 56(c) allows an opposing party to submit additional facts "in a separate section." L. CV. R. 56(c). Given that the plain language of Local Rule 56(c) specifically requires that any additional facts be stated in a separate section, parties are prohibited from incorporating numerous additional facts within their opposition. *See* <u>Natal Pérez v. Oriental Bank & Trust</u>, 291 F. Supp. 3d 215, 218-219 (D.P.R. 2018) (quoting <u>Carreras v. Sajo, Garcia & Partners</u>, 596 F.3d 25, 32 (1st Cir. 2010) and <u>Malave-Torres v. Cusido</u>, 919 F.Supp. 2d 198, 207 (D.P.R. 2013)).

If a party opposing summary judgment fails to comply with Local Rule 56(c)'s strictures, "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." <u>Caban Hernandez v. Philip Morris USA, Inc.</u>, 486 F.3d 1, 7 (1st Cir. 2007). Thus, litigants ignore this rule at

their peril. *See* <u>Natal Pérez</u>, 291 F. Supp. 3d at 219 (citations omitted).

### III. FINDINGS OF FACT

To make findings of fact, the Court analyzed Dr. Alvarado's *Statement of Uncontested Facts* (Docket No. 117-1); Dr. Cruzado's *Statement of Uncontested Material Facts in Support of Summary Judgment* (Docket No. 122-2); DHI's *Statement of Uncontested Material Facts in Support of Summary Judgment* (Docket No. 135); Plaintiffs' *Response to Co-Defendants Dr. Alvarado Torres and Dr. Cruzado Ramos' Statement of Uncontested Material Facts in Support of Motion for Summary Judgment* (Docket No. 143) and Plaintiffs' *Response in Opposition* to DHI's Statement of Uncontested Facts (Docket No. 148). After **only crediting material facts** that are **properly supported by a record citation and uncontroverted**, the Court makes the following findings of fact:

1. Ms. Hernández visited Dr. Alvarado's private medical office in Morovis, Puerto Rico, due to persistent pain after passing a stone. (Docket No. 135 ¶ 16).

2. Dr. Alvarado ordered a sonogram for Ms. Hernández, which was ultimately performed at the Hospital on August 14, 2014. <u>Id.</u> ¶ 21.

3. Following the August 14, 2014 sonogram, Dr. Alvarado recommended an exploratory laparoscopy to find the cause of Mr. Hernández's pain. <u>Id.</u> ¶ 22.

4. Dr. Alvarado also referred Ms. Hernández to Dr. Cruzado, who would be performing the laparoscopy together with Dr. Alvarado. Id.

5. The laparoscopy for Ms. Hernández was scheduled to be performed by Dr. Cruzado-Ramos and Dr. Alvarado-Torres on September 5, 2014 at the Hospital as an ambulatory procedure. Id. ¶ 24.

6. Dr. Alvarado and Dr. Cruzado had been granted privileges by DHI to admit and treat their private patients at the Hospital. Id. ¶¶ 27-28; 30-31.

7. Dr. Alvarado and Dr. Cruzado are not, and have never been, DHI employees. Id. ¶¶ 29, 32.

8. Ms. Hernández arrived at the Hospital on September 4, 2014 for an ambulatory laparoscopy procedure which was scheduled to be performed the morning of September 5, 2014 by Dr. Cruzado-Ramos and Dr. Alvarado-Torres. Id. ¶ 34.

9. On September 4, 2014, Ms. Hernández filled out various forms related to the laparoscopy procedure and executed a "Consent for Surgeries and Other Procedures Form." Id. ¶¶ 43-47.

10. The "Consent for Surgeries and Other Procedures Form" is signed by both Ms. Hernández and Dr. Cruzado. Id. ¶ 52.

11. The "Consent for Surgeries and Other Procedures Form" signed by Plaintiff contains the following language:

I hereby request and authorize Dr. Cruzado, or
any other physician or physicians designated
by him, or whose cooperation or assistance he
may request, to perform on Yolanda Hernandez
the following operation or procedure Abdominal
Laparoscopy

I hereby certify that the indication and
purposes of the surgery and/or procedure, that
is, Abdominal Laparoscopy, has been explained
to me.

I hereby certify that the options to treat my
condition, pursuant to the diagnostic studies
that have been performed on me, have been
explained to me and include: Abdominal Pain.

It has been explained to me that during the
course of the operation unforeseen conditions
may come up, requiring the original procedure
to be extended and/or a different procedure
than the one stated above. Therefore, I give
my consent and authorization for the
aforementioned physician and/or his
assistants to perform any surgical procedures
they may deem necessary and convenient, in the
exercise of their best professional judgment.

Pursuant to the clinical evidence available,
the short-and long-term risks involved, the
benefits, and the possibility of
complications, such as internal bleeding
sepsis death have been explained to me.

[…]

I hereby certify that I have read, or someone
has read, and I have perfectly understood,
this consent to practice the aforementioned
operation or procedure: that all the relevant
information has been provided in the blank
spaces herein and that prior to signing the
paragraphs not accepted and/or relevant to my
case have been crossed out.

(Docket Nos. 135 ¶¶ 50, 52, 55, 57-58; 135-16 at 1).

12. The "Consent for Surgeries and Other Procedures Form"
    contains the following language prior to Dr. Cruzado's
    signature: "I hereby declare that I have explained in
    detail to the aforementioned patient the nature of the
    intervention to be performed on him/her, the risks
    involved, and that the patient has signed this consent with
    express and clear knowledge of what it is he/she is
    authorizing." (Docket No. 135 ¶ 63).

13. On September 5, 2014, Ms. Hernández underwent the
    laparoscopic procedure. (Docket Nos. 117-1, Fact 2; 122-2
    ¶ 6; 135 ¶ 74).

14. On September 6, 2014, the day after the operation, Dr.
    Alvarado visited Ms. Hernández in her hospital room and
    informed her that her intestines had been lacerated during
    the laparoscopy. (Docket No. 122-2 ¶ 8).

15. Mr. Ramos, Ms. Hernández's son, who was at the Hospital
    during his mother's operation, spoke with Dr. Alvarado and
    kept a notebook in which he wrote down what was happening
    while Ms. Hernández was hospitalized. (Docket No. 135 ¶¶
    77-81).

16. Ms. Hernández was discharged from the Hospital on
    September 6, 2014 and went home. (Docket Nos. 122-2 ¶ 12;
    135 ¶ 86).

17. Ms. Hernández stated that after she was discharged on September 6, 2014 and went home, she noticed that her stomach was swollen and "thought that it was because of the operation and that it [would] probably disappear in the next few days." (Docket Nos. 135 ¶ 87; 135-6 ¶ 9).

18. On September 7, 2014, Ms. Hernández noticed that her stomach was very swollen, as if she were four months pregnant, and that her pain increased throughout the day. (Docket No. 135 ¶¶ 88-89).

19. On the night of September 7, 2014, Ms. Hernández was screaming in pain and was transported to the Hospital in an ambulance. Id. ¶¶ 90-91.

20. At around 6:00 a.m. on September 8, 2014, Ms. Hernández began to vomit a green substance and urinated all over herself. She noticed that there was blood in her urine. Id. ¶ 93.

21. After that, Ms. Hernández was admitted again to the Hospital and had a Foley or catheter put in to her bladder. (Docket No. 135 ¶ 94).

22. The medical files and records show that on September 8, 2014, Plaintiff was admitted to the Hospital (the "Second Hospitalization") with an admitted diagnosis of postoperative infection arising out of laparoscopic operation. (Docket No. 135 ¶¶ 37-38; 135-12 ¶ 12).

23. Ms. Hernández remained hospitalized until December 10, 2014. (Docket Nos. 117-1 Fact #3; 135 ¶ 18).

24. Ms. Hernández was admitted to the Hospital again on December 20, 2014 and was discharged on January 9, 2015 (the "Third Hospitalization"). (Docket No. 135 ¶ 19).

25. In her Unworn Declaration under Penalty of Perjury, Ms. Hernández stated that:

> After January 9th, 2015, I started looking for information and legal advice because I then suspected that the information that was given to me by Dr. Alvarado was either limited or not true and that my pain, sufferings and damages were perhaps linked to the laparoscopy performed on September 5th, 2014.

(Docket No. 135-6 ¶ 16).

26. Ms. Hernández testified that she had retained both attorneys Efraín García Rodríguez ("Attorney García") and María Soledad Piñeiro ("Attorney Piñeiro") to prosecute a potential medical malpractice claim. (Docket No. 135 ¶¶ 98-99).

27. Attorney García testified that Ms. Hernández visited his office for the first time seeking legal advice in February 2015 and gave authorization for release of her medical records on February 12, 2015. Id. at 111.

28. December 16, 2015, Ms. Hernández through her legal counsel, Attorney Piñeiro, sent individual letters to both

Dr. Alvarado and Dr. Cruzado. These letters were identical,
save who they were addressed to and their address, and
stated the following:

> On September 5, 2014, Mrs. Yolanda
> Hernández González was admitted into the
> Hospital Manatí Medical center. She was
> also admitted into the hospital on
> September 8 and December 20 of the same
> year. During these visits, as shown in
> her medical record, she was seen by Dr.
> Armando Cruzado Ramos and Irma Alvardo
> Torres.
>
> Mrs. Yolanda Hernández González suffered
> damages which we believe were caused by
> your negligence. The purpose of this
> letter is to toll the limitations period
> for filing legal action.

(Docket Nos. 135-21; 135-22).

29. On December 17, 2015, Ms. Hernandez, through Attorney
Piñeiro, sent a letter to the Hospital stating the
following:

> On September 5, 2014, Mrs. Yolanda
> Hernández González was admitted into the
> Hospital Manatí Medical center. She was
> also admitted into the hospital on
> September 8 and December 20 of the same
> year. During these visits, as shown in
> her medical record, she was seen by Dr.
> Armando Cruzado Ramos and Irma Alvardo
> Torres.
>
> Mrs. Yolanda Hernández González suffered
> damages which we believe were caused by
> your negligence. The purpose of this
> letter is to toll the limitations period
> for filing legal action.

(Docket Nos. 135 ¶ 102; 135-20).

30. Attorney Piñeiro stated that she does not recall Mr. Ramos
    ever approaching her regarding her representing him and
    that she never sent a letter on his behalf attempting to
    toll the statute of limitations. (Docket No. 135 ¶¶ 104-
    106).

31. Attorney García testified that he was never Mr. Ramos'
    legal counsel nor did he send a letter on his behalf
    attempting to toll any statute of limitations. <u>Id.</u> ¶ 114-
    115.

## IV.   APPLICABLE LAW

### A.    The Statue of Limitations for Tort Claims

The Puerto Rico Civil Code applies to this diversity case and
establishes a **one-year statute of limitations** for tort actions.
The statute starts to run once "the aggrieved person ha[s]
knowledge" of the injury. P.R. Laws Ann. tit. 31, § 5298. *See also*
<u>Ramos-Baez v. Bossolo-Lopez</u>, 240 F.3d 92, 93 (1st Cir. 2001). The
Puerto Rico Supreme Court "recognizes two types of knowledge" that
will trigger said statute of limitations. <u>Marcano Delaney v. Puerto
Rico Children's Hosp.</u>, 261 F. Supp. 3d 235, 238–39 (D.P.R. 2016)
(citations omitted). The one year-period begins when a plaintiff
(1) has "**actual knowledge** of both the injury and of the identity
of the person who caused it" <u>**or**</u> (2) "is deemed to be **on notice of
her cause of action** if she is aware of certain facts that, with

the **exercise of due diligence**, should lead her to acquire actual knowledge of her cause of action." Alejandro-Ortiz v. Puerto Rico Elec. Power Auth., 756 F.3d 23, 27 (1st Cir. 2014) (emphasis added) (citations omitted). Notice of the cause of action occurs "when there exist some **outward or physical signs through which the aggrieved party may become aware and realize that [they have] suffered an injurious aftereffect, which when known becomes a damage even if at the time its full scope and extent cannot be weighed.**" Torres v. E.I. Dupont de Nemours & Co., 219 F.3d 13, 18-19 (1st Cir. 2000) (emphasis added) (internal quotations omitted). Said succinctly, "[t]he clock starts ticking 'when the injured party **knew or should have known of the injury and of the likely identity of the tortfeasor**.'" Lopez-Rivera v. Hosp. Auxilio Mutuo, Inc., 290 F. Supp. 3d 137, 143 (D.P.R. 2017) (emphasis added) (quoting Tokyo Marine & Fire Ins. Co. v. Perez & Cia., De Puerto Rico, Inc., 142 F.3d 1, 3 (1st Cir. 1998)). *see also* Corey-Lanuza v. Medic Emergency Specialties, Inc., 229 F. Supp. 2d 92, 99 (D.P.R. 2002) ("subjective reasonable diligence will determine the accrual date.").

To determine when a plaintiff should have known of the injury and its author, the analysis focuses on whether plaintiff knew sufficient facts to establish "**reasonable likelihood**" of an injury or liability, **not** "**legal certainty**." Estate of Alicano Ayala v. Philip Morris, Inc., 263 F. Supp. 2d 311, 320 (D.P.R. 2003)

(emphasis added). In other words, the Courts must focus "on whether the plaintiff knew the facts that gave rise to the claim, not their full legal implications." <u>Villarini-Garcia v. Hosp. Del Maestro, Inc.</u>, 8 F.3d 81, 85 (1st Cir. 1993). Once a plaintiff is aware of sufficient facts to be put on notice of a potential tort claim, they must "pursue that claim with reasonable diligence, or risk being held to have relinquished [their] right to pursue it later, after the limitation period has run." <u>Rodriguez-Suris v. Montesinos</u>, 123 F.3d 10, 16 (1st Cir. 1997).

When a plaintiff sues later than a year after the injury, *i.e.* beyond the statute of limitations, they bear the burden of proving that, **despite exercising due diligence, they "lacked the requisite 'knowledge' at the relevant times**." <u>Marcano Delaney</u>, 261 F. Supp. 3d at 238-39. (quoting <u>Alejandro-Ortiz</u>, 756 F.3d at 27) (emphasis added). However, "[i]f this burden is not met, the statute of limitations will then start to run from the day of the injury regardless of whether or not there is actual knowledge." <u>Fragoso de Conway v. Lopez</u>, 794 F. Supp. 49, 51-52 (D.P.R. 1992). In other words, "if a plaintiff's ignorance of an injury and its origin was due to the plaintiff's own negligence or lack of care, then the statute of limitation would not be tolled." <u>Rodriguez-Suris</u>, 123 F.3d at 15 (citing <u>Colon Prieto v. Geigel</u>, 115 P.R. Dec. 232, ----, 15 P.R. Offic. Trans. 313, 327-29 (1984)). *See also* <u>Melendez Colon v. Rosado Sanchez</u>, 2019 WL 3940919, at *5

(D.P.R. 2019) ("The Puerto Rico Supreme Court makes clear that a plaintiff may not delay once he has become aware of an injury, even if at the time its full scope and extent cannot be weighed.") (internal quotations omitted).

The concept of due diligence "is an objective standard that 'has buried within it a normative question of how much diligence should be expected of a reasonable lay person.'" Estate of Alicano Ayala, 263 F. Supp. 2d at 317. (quoting Villarini-Garcia, 8 F.3d at 84). *See also* Rodriguez-Suris, 123 F.3d at 14 ("plaintiff's subjective awareness is measured against the level of awareness that the plaintiff, having been put on notice as to certain facts and having exercised reasonable care regarding a potential claim, should have acquired."). To exercise due diligence, a plaintiff must "promptly assert their rights" and make "**active efforts to seek answers and clarify doubts**," instead of merely waiting "for answers to fall from the sky […] when faced with facts that create a reasonable basis for concern about negligence." Estate of Alicano Ayala, 263 F. Supp. at 317 (emphasis added).

When "questions of fact are presented, statute of limitations defenses are ordinarily submitted to the jury." Melendez-Arroyo v. Cutler-Hammer de P.R. Co., 273 F.3d 30, 38 (1st Cir. 2001). The First Circuit has held that "typical statute of limitations questions--**when the injury occurred, when the reasonable plaintiff would have learned of it, whether there was concealment by the**

**defendant- -are archetypal factual issues fit for jury resolution** and, in addition, are ordinarily closely intertwined with merits issues." Id. (emphasis added).

"[E]ven where no raw facts are in dispute, the issues of due diligence and adequate knowledge are still ones for the jury **so long as the outcome is within the range where reasonable men and women can differ**." Villarini-Garcia, 8 F.3d at 87 (emphasis added). However, pursuant to this exception, a court may make this determination when "the evidence **is so one-sided as to compel a finding**." Rodriguez-Suris, 123 F.3d at 14-15 (emphasis added). Therefore, if a defendant successfully shows that plaintiff "has not satisfied, or cannot satisfy [their] burden of proving lack of true knowledge (that is, lack of full awareness of all that need be known to preclude tolling), final judgment for the defendant on the ground of late filing is appropriate." Id. at 14.

### B.   Tolling the Statute of Limitations

Pursuant to Puerto Rico law, the one-year statute of limitations for personal damages can be tolled by presenting an extrajudicial claim. *See* Caraballo v. Hosp. Pavia Hato Rey, Inc., 377 F. Supp. 3d 99, 115-116 (D.P.R. 2019) (citing PR Laws Ann. tit. 31 § 5303). To effectively toll the statute of limitations, extrajudicial claims must: (1) "be made by the holder of the substantive right" or their legal counsel; (2) be addressed to the debtor, not a third party;" and (3) "demand the same conduct or

relief ultimately sought in the subsequent suit." Rosa v. Hosp. Auxilio Mutuo de Puerto Rico, Inc., 620 F. Supp. 2d 239, 248 (D.P.R. 2009) (citing Morán Vega v. Cruz Burgos, 537 F.3d 14, 21 (1st Cir. 2008)). Once the original statute of limitations is "interrupted through an extrajudicial claim," then "the [one-year] period starts to run anew." Kery v. Am. Airlines, Inc., 931 F. Supp. 947, 951 (D.P.R. 1995) (citation omitted).

## V.   ANALYSIS

It is uncontested that Plaintiffs' claims arise from the **September 5, 2014** laparoscopy performed on Ms. Hernández by Dr. Alvarado and Dr. Cruzado at DHI. (Fact ¶ 13). The day after the surgery, **September 6, 2014**, Dr. Alvarado informed Ms. Hernández that her intestines had been lacerated during the procedure. (Fact ¶ 14). After being discharged, Ms. Hernández experienced intense pain and returned to the hospital on September 8, 2014, where she remained hospitalized until **December 10, 2014**. (Facts ¶¶ 20-23). Shortly thereafter, Ms. Hernández returned for her third and final hospitalization at DHI from **December 20, 2014** through **January 9, 2015**. (Fact ¶ 24). By **February 12, 2015**, Ms. Hernández had retained legal counsel to represent her medical malpractice claims. (Facts ¶¶ 26-27). On **December 16, 2015**, Ms. Hernández, through her legal counsel, sent Dr. Alvarado, Dr. Cruzado and DHI individual letters to toll the statute of limitations as to her medical malpractice claim. (Facts ¶¶ 28-29). Mr. Ramos's claims are not included in

that letter, nor did he send his own. (Facts ¶¶ 30-31). Regarding their lack of informed consent claim, Plaintiffs posit that they both discovered it on **July 5, 2016**, when they received Dr. José A. Gratacós's expert report detecting an alleged lack of informed consent in the medical record. (Docket Nos. 144 ¶ 3.11; 148 ¶ 3.18). Plaintiffs ultimately filed the *Complaint* at bar on **December 9, 2016**. (Docket No. 1).

Defendants argue that the accrual date for all of Plaintiffs' claims is September 5, 2014, *i.e.* the date of the laparoscopy. Defendants maintain that the causes of action before the court are time-barred because both Ms. Hernández's extrajudicial claim and Plaintiffs' *Complaint* were presented after the one-year statute of limitations had already elapsed. The facts show that the extrajudicial claim was sent, and the present lawsuit was filed, more than a year after the injury occurred. Consequently, Plaintiffs now bear the burden of proving that, despite exercising due diligence, they "lacked the requisite knowledge at the relevant times" as to all their claims. Marcano Delaney, 261 F. Supp. 3d at 238-39. (internal quotations omitted).

### A.   Ms. Hernández's Medical Malpractice Claims

Ms. Hernández provides two reasons for why she did not discover that her injuries were related to the laparoscopy until after she was discharged from the Hospital. First, Ms. Hernández claims that she relied on her physician's representations.

Specifically, Ms. Hernández alleges that after the laparoscopy, Dr. Alvarado informed her that the lacerations had been cleaned, cauterized, and that she would be fine and recover shortly. (Docket Nos. 135 ¶ 76; 135-6 ¶ 7). Furthermore, Ms. Hernández alleges that when she returned to the Hospital with multiple symptoms on September 8, 2014, Dr. Alvarado explained that the blood in her urine was due to a passed kidney stone and not related to the laparoscopy. (Docket No. 135-6 ¶ 13). Second, Ms. Hernández claims that she could not have known the cause of her injury until after she was ultimately discharged because she was heavily medicated throughout her second and third hospitalizations and could not make decisions for herself. (Docket No. 144 ¶ 1.8). Ms. Hernández supports this with her own deposition testimony and that of Mr. Ramos. (Docket Nos. 144-3 at 4; 144-5 at 5).

In response, the physician co-defendants contend that Ms. Hernández should have known that her alleged injuries were caused by the laparoscopy regardless of any representations made because: (1) they began relatively quickly after the surgery; and (2) the pain was in the same anatomical area as the procedure. (Docket No. 155 ¶¶ 3-4). Moreover, they cite progress notes from Ms. Hernández's medical record that state that she was conscious, awake and alert on different dates during her second and third hospitalizations. (Docket Nos. 155 ¶¶ 7-9; 115-1).

The First Circuit has held that "[i]f a plaintiff's suspicions that she may have been the victim of a tort are assuaged by assurances made by the person who caused the injury, a plaintiff will not be held responsible for failing to pursue her claim more aggressively." Rodriguez-Suris, 123 F.3d at 16 (citing Colon Prieto, 15 P.R. Offic. Trans. 313, 329-30 (1984)). However, this ruling cannot be used to defend patently unreasonable behavior. Despite any assurances made by the alleged tortfeasor, this District has previously found that a potential plaintiff may still "kn[ow] enough to require her to seek the advice of an attorney regarding her possible malpractice claim." Arnold v. Montilla, 13 F. Supp. 2d 229, 235 (D.P.R. 1998), aff'd, 181 F.3d 79 (1st Cir. 1999). In the case at bar, approximately **one (1) month** after being discharged for the third and final time, Ms. Hernández retained legal counsel to pursue her medical malpractice cause of action. (Facts ¶¶ 26-27).

Whether Ms. Hernández had adequate knowledge or exercised due diligence are necessarily questions for the jury and not this court. See Villarini-Garcia, 8 F.3d at 87. Both when a reasonable plaintiff would have learned of their injury and if there was concealment by the defendants **are "archetypal factual issues fit for jury resolution."** Id. (emphasis added); see also, Melendez-Arroyo, 273 F.3d at 38. Similarly, determining the extent and nature of Ms. Hernández's consciousness during her

hospitalizations would require "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" all of which "are jury functions, not those of a judge[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The evidence before the court is "not so one-sided as to compel a finding" that Ms. Hernández had sufficient knowledge of her potential **medical malpractice claim** in September 2014 or that she patently failed to exercise due diligence. Rodriguez-Suris, 123 F.3d at 14–15 (emphasis added).

Lastly, the Court notes that the First Circuit has previously found that medical malpractice claims begin to accrue, at the latest, when a would-be plaintiff retains legal counsel. *See* Gonzalez v. United States, 284 F.3d 281, 290 (1st Cir. 2002), as corrected (May 8, 2002) (citing Kay v. Johnson & Johnson, 722 F.Supp. 874, 881 (D.Mass. 1989), aff'd 902 F.2d 1 (1st Cir. 1990)). If the jury finds that the date Ms. Hernandez retained legal counsel is the accrual date in the present case, Ms. Hernández's extrajudicial claim would have effectively tolled the statute of limitations and her medical malpractice claim would not be time-barred.

**B.   Ms. Hernández's Lack of Informed Consent Claims**

As discussed above, Ms. Hernández (1) underwent a **scheduled** laparoscopy on **September 5, 2014**; (2) was informed on **September 6, 2014** that her intestines had been lacerated during the surgery;

and (3) retained legal counsel to litigate the damages that allegedly occurred during said procedure by **February 12, 2015**. (Facts ¶¶ 5, 13-14, 26-27). However, Ms. Hernández posits that she did not discover the lack of her informed consent until it was brought to her attention on **July 5, 2016**, after receiving Dr. José A. Gratacós's expert report. (Docket Nos. 144 ¶ 3.11; 148 ¶ 3.18). Thus, Ms. Hernández claims that the statute of limitations for her lack of informed consent claim began on **July 5, 2016**.

A cause of action for lack of informed consent is <u>separate</u> from a medical malpractice claim and has its own, distinct, accrual date, albeit the same one-year statute of limitations applies. *See* <u>Santana-Concepcion</u>, 768 F.3d at 10. "The statute of limitations for a physician's failure to obtain the patient's informed consent for surgery […] begins to run when the aggrieved learns that she was subjected to an unauthorized medical procedure." <u>Id.</u> On the other hand, when the claim is premised on a physician's failure to adequately inform the patient of potential negative consequences, the statute begins to run when "a reasonable person [would] conclude that a warning of such possible consequences should have been given before the operation." <u>Id.</u> at 10-11 (quoting <u>Villarini-Garcia</u>, 8 F. 3d at 85). Allegedly, both types of lack of informed consent claims are present in this case.

Ms. Hernández was undoubtedly aware that she underwent the **scheduled laparoscopy on September 5, 2014**. (Facts ¶¶ 5, 13).

Furthermore, Dr. Alvarado explicitly informed Ms. Hernández of the lacerations that occurred the following day. (Fact ¶ 14). Thus, any injury caused by the lack of informed consent occurred on the date of the laparoscopy. Ms. Hernández must show that she could not have discovered her lack of informed consent within a one-year period after said injury occurred. "If this burden is not met, the statute of limitations **will then start to run from the day of the injury regardless of whether or not there is actual knowledge**." Fragoso de Conway, 794 F. Supp. at 51-52.

Although the statute of limitations beings when a plaintiff learns that they underwent an unauthorized procedure, a plaintiff cannot merely wait "**for answers to fall from the sky**" and must instead make **"active efforts to seek answers and clarify doubts."** Estate of Alicano Ayala, 263 F. Supp. at 317 (emphasis added). The applicable case law does not require an expert report to discern lack of informed consent. More importantly, unlike with her medical malpractice claim, Ms. Hernández **proffers no evidence of due diligence or justification** for failing to discover her lack of informed consent before 2016. For example, Ms. Hernández has not contended that she did not have access to her medical records to verify whether her consent was properly obtained. The Court finds that Ms. Hernández did not meet her burden of proving that, **despite exercising due diligence, she "lacked the requisite 'knowledge' at the relevant times**." Marcano Delaney, 261 F. Supp. 3d at 238-39.

Ms. Hernández did not toll the statute for her lack of informed consent claims and thus, they are time-barred.

### C.   Mr. Ramos' damages claims

Under Puerto Rico law, in medical malpractice and lack of informed consent tort claims, "relatives are entitled to 'compensation for the sufferings, emotional distress, or mental anguish experienced as a consequence of the material or other damages caused directly to their relatives.'" Santana-Concepcion, 768 F.3d at 10 (quoting Santini Rivera v. Serv. Air, Inc., 137 P.R. Dec. 1, 10-12 (1994)). The statute of limitations to assert "such an action is one year, and begins to run when the plaintiffs learn about the damages suffered by the relative-victim." Id.

Mr. Ramos was present during his mother's laparoscopy on September 5, 2014 and even maintained a notebook detailing the occurrences of her hospitalization. (Fact ¶ 15). The facts show, and Plaintiffs concede, that Mr. Ramos was not included in Ms. Hernández's extrajudicial claim as to the medical malpractice claim nor did he send his own extrajudicial claim to toll the statue for his cause of action.[1] (Facts ¶¶ 30-31; Docket Nos. 144 ¶ 4.14; 148 ¶ 4.20). Therefore, Mr. Ramos' damages caused by the alleged medical malpractice his mother endured are time-barred. Likewise, because Ms. Hernández's lack of informed consent claim

---

[1] "In the case of Mr. Ramos […] admittedly, the tolling letter sent to DHI does not contain his name." (Docket Nos. 144 ¶ 4.14; 148 ¶ 4.20).

is time-barred, Mr. Ramos' damages claim arising from the lack of consent is also time-barred.

## VI.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the Defendants' *Motions for Summary Judgment* at Docket Nos. 117, 122, and 133. Whether Ms. Hernández's medical malpractice claims against Dr. Alvarado and Dr. Cruzado are time-barred remains a question for the jury. On the other hand, Ms. Hernández lack of informed consent claims against all co-defendants are time-barred and hereby **DISMISSED WITH PREJUDICE**. Likewise, the totality of Mr. Ramos' damages claims against all co-defendants are time-barred and hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of June 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge